UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANAMIRIA MADRIGAL, individually and doing business as Aztek Cellular, a sole proprietorship; and AZTEK CELLULAR, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NEW CINGULAR WIRELESS SERVICES, INC., a corporation; and AT&T MOBILITY, LLC, a corporation,<br><br>Defendants. | 1:09-cv-0033 OWW SMS<br><br>ORDER AFTER SCHEDULING CONFERENCE |

I.   Date of Scheduling Conference.

April 15, 2009.

II.  Appearances Of Counsel.

Cornwell & Sample, LLP by Stephen R. Cornwell, Esq., and Judith M. Harless, Esq., appeared on behalf of Plaintiffs.

Kohut & Kohut LLP by Donald P. Wagner, Esq., appeared on behalf of Defendants.

III. Summary of Pleadings.

**Plaintiffs' Factual Contentions**:

1.   On or about April 1, 2002, Plaintiffs entered into an

1

Exclusive Dealer Agreement ("Agreement") with AT&T Wireless Services, Inc.  Under the terms of this Agreement, Plaintiffs were authorized to market wireless products and service to existing and potential customers of AT&T Wireless.  They opened several retail locations under the name Aztek Cellular from which they offered, sold, and distributed the goods and services of AT&T Wireless to consumers.

    2.    The Agreement by its terms provided that AT&T Wireless would train Plaintiffs on how to properly offer and sell its products and service; and Plaintiffs were required to solicit business strictly in accordance with AT&T Wireless's established procedures.  All prices and terms for wireless service were established by AT&T Wireless.  AT&T Wireless also provided promotional literature for Plaintiffs' stores, and Plaintiffs agreed to maintain an adequate stock of AT&T Wireless brochures and other advertising materials to meet any customer needs.  Any telemarketing or internet advertising program devised by Plaintiffs required AT&T Wireless's written approval prior to use.  The Agreement further provided that AT&T Wireless authorized Plaintiffs to represent themselves to the consuming public as an "Authorized Dealer" of AT&T Wireless and to use its trademarks, service marks, trade names, logos, or similar markings.  Plaintiffs were permitted to use such marks in their advertising.

    3.    In exchange for these rights as well as other benefits and compensation, Plaintiffs granted to AT&T Wireless a purchase money security interest (i) in any and all equipment they purchased from AT&T Wireless; (ii) in any accounts created for or

from the sale, lease, license, exchange, or other disposition of equipment by Plaintiffs; and (iii) in any proceeds of such equipment or accounts. Plaintiffs further agreed to pay any charges billed to them for promotional materials that AT&T provided. They also incurred expenses for themselves and all their employees to attend out-of-town mandatory AT&T training, and they were required to carry insurance at their own expense naming AT&T as an additional insured against any claims of injury, including injuries arising from AT&T's own products.

4. Plaintiffs also agreed that they would not solicit, sell, or offer any like goods and services of any competitor of AT&T Wireless during the term of the Agreement, and that they would not lease, sublease, or otherwise provide space at any of their retail locations to any competitive service provider or seller. Similarly, Plaintiffs were prohibited from sharing any resources with a provider or seller of any competitive service. In connection with the Agreement, Plaintiffs were given a copy of a Manual of Dealer Policies. They also were allowed access to certain proprietary information of AT&T Wireless which they agreed they would keep confidential.

5. During the operative term of the Agreement, Plaintiffs experienced notable financial success. They opened a total of nine retail outlets which they operated under the name Aztek Cellular. They focused their marketing on the large local Hispanic community, and their stores generated basic monthly commissions totaling hundreds of thousands of dollars.

6. Despite Plaintiffs' success, Plaintiff Madrigal experienced instances when she was treated negatively by AT&T

3

because she was a woman among mainly male dealers and because she was Hispanic. For example, and in particular, in 2001, AT&T initially refused to contract with Madrigal directly, but required instead that a qualified male be named as the dealer on her business. Thereafter, even when she was allowed to contract in her own name, she was isolated from other participants at dealer conventions, and AT&T personnel would not converse with her or address her inquiries. The AT&T employee specifically charged with developing Hispanic marketing refused to assist her and told her pointedly that she was on her own to develop marketing plans for the Hispanic community in Fresno. Thereafter, AT&T account executives disparaged Madrigal's Hispanic market and contended it was creating friction for Plaintiffs with AT&T, despite the fact that Plaintiffs were experiencing excellent financial results at each of their numerous retail outlets.

7. In about 2005, AT&T Wireless merged with Cingular Wireless. To bridge the change in compensation strategies that arose as a result of the merger, Cingular introduced a program of Special Promotional Incentives Funds ("SPIFs"). As former AT&T Wireless customers were successfully migrated to Cingular and/or additional data features were sold to those customers, Plaintiffs earned SPIFs as incentive compensation for achieving targeted sales opportunities.

8. Calculations of SPIFs that had been earned was a complicated process, and Cingular frequently was delayed in providing accurate and complete SPIF accountings and payments to Plaintiffs. By the fall of 2005, Plaintiffs calculated that

Cingular owed them more than $2,000,000 in unpaid SPIFs and improperly calculated commissions. In response to their demands for payment, Cingular offered to settle up the account for $475,000. Plaintiffs refused, since Cingular had no accounting reflecting their own calculations were in error. Cingular then reduced its offer to $435,000, again without any supporting documentation. When Plaintiffs again refused to compromise their claim, instead of paying what was owed, Cingular sent them a notice of termination of their dealership. Cingular also made a final offer to settle the disputed SPIFs and commissions for only $149,275.

9. The notice of termination was completely unexpected and contrary to the renewal terms that Plaintiffs already had been given. The term of the original Agreement was two years with automatic one-year extensions if not otherwise terminated by either of the parties. When the Agreement came up for renewal in 2004 and 2005 it was renewed. In the fall of 2005, Plaintiffs were informed the Agreement would be renewed again in 2006. Instead, on December 24, 2005, Defendants served Plaintiffs with a 90-day written notice of termination.

10. Defendants took back Plaintiffs' dealership on or about April 1, 2006. They made no effort at that time to buy back any of Plaintiffs' inventory or to compensate them for the value of their business or the funds they had invested in the authorized dealership.

**Plaintiffs' Legal Contentions**:

1. That Defendants are the agents, employees, alter egos, and/or successors of each other and of AT&T Wireless Services,

1. Inc.

2. That Plaintiffs are "persons" who were granted a "dealership" as those terms are defined in California Civil Code § 81.

3. That Plaintiffs were discriminated against because of Plaintiff Madrigal's sex, color, race, ancestry, and national origin in violation of California Civil Code § 51.

4. That Plaintiffs' Exclusive Dealer Agreement and its various renewals constituted a franchise pursuant to California Business & Professions Code § 20000 et seq.

5. That Defendants' termination and refusal to renew Plaintiffs' Exclusive Dealer Agreement was unlawful pursuant to the California Franchise Relations Act.

6. That Plaintiffs' Exclusive Dealer Agreement and its various renewals constituted a franchise pursuant to New York General Business Code § 681.

7. That Defendants' termination and refusal to renew Plaintiffs' Exclusive Dealer Agreement was unlawful pursuant to the New York Franchise Law.

8. That Plaintiffs have been damaged by the conduct of Defendants.

9. That Plaintiffs are entitled to damages.

10. That Plaintiffs are entitled to the fair repurchase value of all the resalable inventory they had at the time of termination.

11. That Plaintiffs are entitled to attorneys' fees pursuant to California Civil Code § 86 and New York General Business Law § 691.

12. That Defendants' conduct in their relations with Plaintiffs was unfair, unlawful, and fraudulent and constituted unfair competition pursuant to California Business & Professions Code § 17200 et seq.

13. That Plaintiffs are entitled to restitution of their wrongfully withheld funds and disgorgement of Defendants' profits acquired as a result of their unfair, illegal, and fraudulent business acts and practices.

14. That Plaintiffs complied with all the terms of their Exclusive Dealer Agreement and the Manual of Dealer Policies provided to them by Defendants during the term of their franchise dealership.

15. That Defendants failed to comply with all the terms required of them by Plaintiffs' Exclusive Dealer Agreement and by their own Manual of Dealer Policies during the term of Plaintiffs' franchise dealership.

16. That Plaintiffs adequately complied with the arbitration provisions of the Exclusive Dealer Agreement.

17. That Defendants waived any rights they had to arbitrate any claims or causes of action set forth in the First Amended Complaint for Damages.

18. That the arbitration provisions of the Exclusive Dealer Agreement violate California's public policy and are not enforceable by a court in California regardless of whether California or New York law applies.

19. That the arbitration provisions of the Exclusive Dealer Agreement do not apply to Plaintiffs' statutory claims for relief.

20. That Plaintiffs' suit is not barred in whole or in part by any previous agreements.

21. That none of Plaintiffs' claims or damages is barred by the passage of time, either by way of contract terms or statutory terms.

22. That Plaintiffs are entitled to a jury trial on their dealership and franchise claims for relief.

**Defendants' Factual Contentions**:

1. Defendants contend that the Exclusive Dealer Agreement expired and that it was not terminated for reasons related to the gender, race or ethnicity of Ms. Madrigal. Defendants further contend that Plaintiffs owe an as yet undetermined amount in excess of $149,000 to them for product sold to them, for loans and dealer advances made to them, and pursuant to Ms. Madrigal's personal guarantee. Moreover, Defendants contend that most of the claims made here by Plaintiffs are barred by the contractual limitation provisions of the Agreement and by virtue of separate settlement agreements between the parties entered into during the course of their business dealings.

**Defendants' Legal Contentions**

1. Defendants dispute the legal contentions of Plaintiffs, including any contention that Plaintiffs are entitled to any amount in damages. Defendants further contend:

    a. To the extent Plaintiffs attempt to state claims under either the California or New York franchise laws, those claims are barred by the express terms of the Exclusive Dealer Agreement.

    b. The entire matter must be arbitrated by the

Plaintiffs pursuant to their arbitration clause contained in the Exclusive Dealer Agreement.

       c.    The Exclusive Dealer Agreement expired pursuant to its terms.

       d.    Defendants had no obligation, contractual or otherwise, to renew the Exclusive Dealer Agreement.

       e.    Plaintiffs owe an amount to be determined at arbitration or trial, but believed to be in excess of $149,000 to Defendants.

       f.    Plaintiffs breached the Exclusive Dealer Agreement by failing to arbitrate their claims pursuant to the arbitration clause in the Agreement and by failing to honor the 180-day contractual limitation period.

IV.   Orders Re Amendments To Pleadings.

    1.    A First Amended Complaint for Damages was filed March 5, 2009, pursuant to stipulation of the parties. Defendants timely answered the original complaint and that answer is deemed responsive to the First Amended Complaint pursuant to the Court's March 4, 2009, order on the stipulation. The parties do not contemplate further amendments to the pleadings at this time.

V.    Factual Summary.

    A.   Admitted Facts Which Are Deemed Proven Without Further Proceedings.

       1.    Anamiria Madrigal is an individual doing business in the Eastern District of California, Fresno Division, as Aztek Cellular, a sole proprietorship.

       2.    Plaintiff, Aztek Cellular, Inc., is a corporation incorporated under the laws of the State of California.

|     |     |                                                                 |
| --: | --- | --------------------------------------------------------------- |
|  1  |     | 3. New Cingular Wireless Services, Inc., is a                   |

         3.    New Cingular Wireless Services, Inc., is a Delaware corporation and AT&T Mobility, LLC, is a Delaware corporation. In the event there is any difference in the true state of incorporation, Defendants reserve the right to substitute the true state of incorporation.

         4.    On or about April 1, 2002, Plaintiff Madrigal entered into an Exclusive Dealer Agreement with AT&T Wireless.

         5.    Plaintiffs opened several retail locations under the name Aztek Cellular from which they offered, sold, and distributed the goods and services of AT&T Wireless to consumers.

         6.    Plaintiffs were given a copy of a Manual of Dealer Policies.

         7.    The term of the original Exclusive Dealer Agreement was two years with automatic one-year extensions if not otherwise terminated by either of the parties.

         8.    When the Exclusive Dealer Agreement came up for renewal in 2004 and 2005 it was renewed.

         9.    In 2005, AT&T Wireless merged with Cingular Wireless.

         10.   On December 24, 2005, Defendants served Plaintiffs with a 90-day written notice of termination.

         11.   The termination date was on or about April 1, 2006.

   B.    Contested Facts.

         1.    All other factual matters are disputed, including the following:

               a.    Whether there are any earned but unpaid commissions or other earnings that Defendants owe Plaintiffs.

    b. Whether Defendants treated Plaintiffs differently than other authorized dealers and, if so, if the differences related to or were motivated by Plaintiff Madrigal's sex, color, race, ancestry, and/or national origin.

    c. Whether Defendants offered to renew Plaintiffs' Exclusive Agreement in the fall of 2005.

    d. Whether Defendants gave Plaintiffs notice of termination of Plaintiffs' Exclusive Dealer Agreement to get leverage in negotiations over Plaintiffs' claim for earned but unpaid commissions and other earnings.

    e. Whether the parties intended to create a franchise relationship between them.

    f. Whether the Exclusive Dealer Agreement created a franchise relationship between the parties.

## VI. Legal Issues.

 A. Uncontested.

   1. Jurisdiction exists under 28 U.S.C. § 1332.

   2. Venue is proper under 28 U.S.C. § 1391.

   3. The contract has a choice of law provision that chooses the substantive law of the State of New York. Plaintiffs contend that both the laws of the State of California and New York apply in this diversity action. This matter will be resolved by motion.

   4. There is a written Exclusive Dealer Agreement, the original is dated April 1, 2002, and certain renewals. The parties do not dispute the genuineness and authenticity of that contract and its renewals.

   5. Plaintiff was furnished a Manual of Dealer

Policies by AT&T Mobility. The parties do not dispute its authenticity.

   B.   Contested.

All other legal issues relating to both liability and damages are disputed, including the following:

   1.   Whether Defendants are the agents, employees, alter egos, and/or successors of each other and of AT&T Wireless Services, Inc.

   2.   Whether Plaintiffs are "persons" who were granted a "dealership" as those terms are defined in California Civil Code § 81.

   3.   Whether Plaintiffs were discriminated against because of Plaintiff Madrigal's sex, color, race, ancestry, and national origin in violation of California Civil Code § 51.

   4.   Whether Plaintiffs' Exclusive Dealer Agreement and its various renewals constituted a franchise pursuant to California Business & Professions Code § 20000 et seq.

   5.   Whether Defendants were required to renew Plaintiffs' Exclusive Dealer Agreement pursuant to the California Franchise Relations Act.

   6.   Whether Plaintiffs' Exclusive Dealer Agreement and its various renewals constituted a franchise pursuant to New York General Business Code § 681.

   7.   Whether Defendants were required to renew Plaintiffs' Exclusive Dealer Agreement pursuant to the New York Franchise Law.

   8.   Whether either California or New York franchise law applies to this case as the Agreement specifically states

that no franchise relationship existed.

9. Whether Plaintiffs have been damaged by the conduct of Defendants.

10. Whether Defendants have been damaged by the conduct of Plaintiffs.

11. Whether Plaintiffs are entitled to damages.

12. Whether Plaintiffs are entitled to the fair repurchase value of all the resalable inventory at the end of the parties' relationship.

13. Whether Plaintiffs are entitled to attorneys fees pursuant to California Civil Code § 86 and New York General Business Law § 691.

14. Whether Defendants' conduct in their relations with Plaintiffs was unfair, unlawful, and fraudulent and constituted unfair competition pursuant to California Business & Professions Code § 17200 et seq.

15. Whether Plaintiffs are entitled to restitutionary damages from Defendants.

16. Whether Plaintiffs complied with all the terms of the Exclusive Dealer Agreement and the Manual of Dealer Policies during the term of the parties' relationship.

17. Whether Defendants complied with all the terms of the Exclusive Dealer Agreement and the Manual of Dealer Policies during the term of the parties' relationship.

18. Whether some or all of Plaintiffs' claims are excused for any reason from arbitration.

19. Whether Defendants waived any rights they had to arbitrate any claims or causes of action set forth in the First

Amended Complaint for Damages.

20. Whether the arbitration provisions of the Exclusive Dealer Agreement violate California's public policy and are not enforceable by a Court in California regardless of whether California or New York law applies.

21. Whether the arbitration provisions for the Exclusive Dealer Agreement do not apply to Plaintiffs' statutory claims for relief.

22. Whether Plaintiffs' suit is not barred in whole or in part by any previous agreement.

23. Whether any of Plaintiffs' claims arising before March, 2005, survive the parties' Settlement Agreement and accord and satisfaction.

24. Whether any of Plaintiffs' claims are barred by the passage of time.

25. Whether Plaintiffs are entitled to a jury trial on their dealership and franchise claims for relief.

26. Whether Plaintiff Madrigal has any standing to assert the claims made in this case because Defendants contend the claims, if any, belong solely to Aztek Cellular and that such claims have not been assigned to Madrigal.

VII. Consent to Magistrate Judge Jurisdiction.

1. The parties have not consented to transfer the case to the Magistrate Judge for all purposes, including trial.

VIII. Corporate Identification Statement.

1. Any nongovernmental corporate party to any action in this court shall file a statement identifying all its parent corporations and listing any entity that owns 10% or more of the

party's equity securities.  A party shall file the statement with its initial pleading filed in this court and shall supplement the statement within a reasonable time of any change in the information.

IX. Further Scheduling Conference.

    1. The parties believe it is in their best interests that the motion to compel arbitration be first resolved, prior to the further scheduling of this case.

    2. The parties shall, following the Court's ruling on the motion to compel arbitration, in the event the motion is denied, contact the courtroom deputy and obtain a date for a further scheduling conference.

IT IS SO ORDERED.

Dated: __April 16, 2009__            __/s/ Oliver W. Wanger__
                                                        UNITED STATES DISTRICT JUDGE