UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ANAMIRIA MADGRIGAL, | 1:09-cv-0033-OWW-MJS |
|---|---|
| Plaintiff, | MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION (Docs. 56, 57) |
| v. | |
| AT&T WIRELESS SERVICES, Inc., et al., | |
| Defendants. | |

## I. INTRODUCTION.

On November 18, 2008, Anamiria Madgrigal ("Plaintiff") filed an action in Fresno County Superior Court against AT&T Wireless and affiliated companies ("Defendants"). (Doc. 1). Defendants removed Plaintiff's action to federal court on January 1, 2009. (Doc. 2).

On August 17, 2009, the court issued a Memorandum Decision granting Defendant's motion to compel arbitration. (Doc. 30). Plaintiff filed a motion for reconsideration of the Memorandum Decision on December 31, 2009; this motion was denied as moot on September 2, 2010 in light of the Supreme Court's intervening decision in *Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772 (2010), and Plaintiff was directed to file a new motion to dismiss addressing that case. (Docs. 34, 54).

///

**1**

Currently before the court is Plaintiff's second motion for reconsideration filed October 11, 2010. (Doc. 56). Defendant filed opposition and to the motion and objections to Plaintiff's evidence on October 18, 2010. (Docs. 59, 60).[1] Plaintiff filed a reply and responses to Defendant's objections on October 25, 2010. (Docs. 61, 62).

The court heard Plaintiff's motion for reconsideration on November 8, 2010. At the hearing, the court requested supplemental briefing regarding an argument orally offered by Plaintiff that was not included in Plaintiff's written motion. (Doc. 63). Plaintiff filed her supplemental brief on November 15, 2010. (Doc. 64). Defendant filed its supplemental brief on November 22, 2010. (Doc. 67).

## II. **FACTUAL BACKGROUND**.

On or about April 1, 2002, Plaintiff Anamiria Madrigal and AT&T Wireless Services, Inc. entered into an Exclusive Dealer Agreement ("Dealer Agreement"). (Doc. 13 at 3; Doc. 16 at 10). The terms of the Dealer Agreement authorized Madrigal to market wireless products and services to customers of AT&T Wireless. (Doc. 13 at 3). Madrigal opened and operated several retail stores under the name "Aztek Cellular." (Doc. 13 at 3; Doc. 16 at 10). After "Atzek Cellular" incorporated, on August 8, 2002, Madrigal assigned her rights under the Dealer Agreement to Atzek Cellular, Inc. (Woosley Decl. ¶ 5, Ex. C). The term of the Dealer Agreement was two years with automatic one-year extensions if not terminated by

---

[1] As Plaintiff's motion for reconsideration may be resolved without reference to the evidentiary materials submitted by Plaintiff, Defendant's evidentiary objections are moot.

**2**

either party. (Doc. 13 at 4; Doc. 16 at 10). The Dealer Agreement was renewed in 2004 and 2005. (Doc. 13 at 4; Doc. 16 at 10). During the term of the Dealer Agreement, Plaintiffs experienced considerable financial success while operating nine retail stores. (Doc. 13 at 4).

In 2004, Cingular Wireless acquired AT&T Wireless after which AT&T Wireless was renamed New Cingular Wireless Services, Inc. (Doc. 13 at 2). As part of the conversion from AT&T Wireless to Cingular, Plaintiffs were offered "Special Promotional Incentives Funds" ("SPIFs"). (Doc. 13 at 5). For former AT&T Wireless customers Plaintiff successfully transferred to Cingular and/or sold additional data features, Plaintiff earned SPIFs (or commissions) as incentive compensation. (Id.). By the fall of 2005, Plaintiff calculated that she was owed more than $2,000,000 in unpaid and improperly calculated commissions. (Doc. 13 at 5; Doc. 16 at 4-5). However, calculations of SPIFs were complicated and Cingular contested the unpaid amount claimed by Plaintiff. (Doc. 13 at 5). Plaintiff was offered $475,000 in settlement. (Doc. 13 at 5; Doc. 16 at 5). Plaintiff rejected the offer and alleged that Cingular's calculations were erroneous. (Doc. 13 at 5; Doc. 16 at 5). Plaintiff maintains that Cingular "had no accounting reflecting their own calculations were in error." (Doc. 13 at 5; Doc. 16 at 5). Cingular then reduced its offer to $435,000, without providing supporting documentation. (Doc. 13 at 5; Doc. 16 at 5).

After Plaintiff refused to compromise, on December 24, 2005, Defendants served Plaintiff with a 90-day written notice of termination of the Dealer Agreement. (Doc. 13 at 4; Doc. 16 at 10).

On or about April 1, 2006, the Dealer Agreement terminated. (Doc. 13 at 8; Doc. 16 at 10). Cingular made a final attempt to settle the disputed commissions for $149,275. (Doc. 13 at 5; Doc. 16 at 5). Plaintiff rejected the offer. Subsequently, Plaintiff, through counsel, requested mediation or, in the alternative, arbitration of the commission dispute. (Swingle Decl. Ex. A). The parties agreed to mediate (Swingle Decl. Exs. B-C), but the mediation never occurred. After retaining new counsel, Plaintiff requested arbitration of the commission claims. (Cornwell Decl. Exs. A-B). A couple months later, Plaintiff filed a state-court complaint asserting statutory claims arising from termination of the Dealer Agreement.

### III. **LEGAL STANDARD**.

A motion for reconsideration is appropriate where the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there was an intervening change in controlling law. *See School Dist. No. 1J v. AC&S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *McDowell v. Cameron*, 290 F.3d 1036, 1038 (9th Cir. 1999) (en banc). A reconsideration motion should not merely present arguments previously raised, or which could have been raised in a previous motion. *See Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985).

### IV. **DISCUSSION**.

**A. Arguments Advanced in Plaintiff's Motion for Reconsideration**

Plaintiff contends that the order compelling arbitration should be vacated in light of the Supreme Court's intervening decision in *Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772 (2010).

**4**

Plaintiff acknowledges that Jackson "turned on facts and issues not applicable in Plaintiff's case" but avers that *Jackson* "fully supports the position that this Court should decide unconscionability in this case, not the arbitrator." (Motion for Reconsideration at 2-3). Plaintiff contends that "*Jackson* left intact the general principal that it is for the Court (and not the arbitrator) to determine unconscionablility issues absent a specific contract provision to the contrary." (Motion at 4). *Jackson* is of no help to Plaintiff.

*Jackson* reaffirmed the principle that parties can agree to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate, whether their agreement covers a particular controversy, or wether the arbitration agreement is valid. 130 S.Ct. at 2777. *Jackson* also confirmed that a provision delegating to the arbitrator authority to determine the validity of an arbitration agreement bars a court from adjudicating a party's claim of unconscionability unless that claim is based on alleged unconscionability of the delegation provision itself. *Id*. at 2779 ("unless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator").

Here, the law of the case establishes that the parties' arbitration agreement delegated authority to determine the validity of the agreement to the arbitrator. The Memorandum Decision provides:

> [T]he arbitration agreement specifies that "all claims" and "disputes" are subject to arbitration by the AAA, and it explicitly states that the "AAA commercial arbitration

**5**

>rules" govern. Rule 7 is one of those rules. Consistent with the great weight of authority, by incorporating the language of Rule 7 of the AAA commercial arbitration rules into their arbitration agreement, the parties clearly and unmistakably expressed their intent to have the arbitrator decide disputes over the scope of the arbitration agreement.[2]

(Memorandum Decision at 11-12). The Memorandum Decision further provides:

>Plaintiff's challenge to the validity of the arbitration agreement on unconscionability grounds cannot be judicially determined. The parties have clearly and unmistakably provided that arbitrator is empowered to determine the "validity of the arbitration agreement"

(Memorandum Decision at 13).

Plaintiff does not seek reconsideration of the holding that the parties' arbitration agreement delegates authority to determine the validity of the agreement to the arbitrator, and nothing in *Jackson* implicates the principals of contract interpretation on which that holding is based. Nor does Plaintiff's motion for reconsideration contend that the delegation provision is itself unconscionable. Rather, Plaintiff attempts to distinguish *Jackson* on the grounds that (1) the *Jackson* arbitration agreement was a stand-alone contract and thus objection to the validity of the agreement was effectively a challenge to the whole contract, whereas here, Plaintiff challenges specific provisions of the arbitration agreement; and (2) the *Jackson* agreement included a specific delegation provision, to the contrary, there is no express language in the parties' agreement delegating gateway issues to the arbitrator. (Motion for Reconsideration at 3). Neither of

---

[2] AAA Rule 7 provides: "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." (Doc. 19, De Liberty Decl. Ex. A).

**6**

Plaintiff's arguments have merit.

As to Plaintiff's first argument, *Jackson* did not turn on the fact that the agreement was a "stand-alone" arbitration agreement:

> To be sure this case differs from *Prima Paint, Buckeye*, and *Preston*, in that the arbitration provisions sought to be enforced in those cases were contained in contracts unrelated to arbitration -- contracts for consulting services, check-cashing services, and "personal management" or "talent agent" services. In this case, the underlying contract is itself an arbitration agreement. *But that makes no difference*. Application of the severability rule does not depend on the substance of the remainder of the contract. Section 2 operates on the specific "written provision" to "settle by arbitration a controversy" that the party seeks to enforce. Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.

130 S.Ct. at 2779 (citations omitted, emphasis added). With respect to Plaintiff's second contention, nothing in *Jackson* suggests that parties may not delegate gateway questions to an arbitrator by incorporating the rules of an arbitral body into the arbitration agreement. To the contrary, *Jackson* emphasized that federal law places arbitration agreements on equal footing with other types contracts and requires federal courts to enforce them according to their terms. *Id*. As with any contract, parties may incorporate by reference extrinsic materials into their arbitration agreements. *See, e.g., Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009) (holding that where contract provided "arbitration shall be in accordance with the then current Rules of the American Arbitration Association," such rules were incorporated into arbitration agreement).

///

**7**

None of the cases Plaintiff cites in the motion for reconsideration support her contention that, despite the parties' delegation of "gateway" authority to the arbitrator, the court must decide Plaintiff's claims of unconscionability because they are particularized claims. In *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 2010 U.S. App. LEXIS 19309 * 13 (9th Cir. 2010), the Ninth Circuit found that because a party marshaled specific challenges against an arbitration agreement, the district court properly decided the issue of whether the agreement was valid. However, there was no finding by the district court in *Bridge Fund* that the parties had delegated authority to determine questions of validity of the arbitration agreement to the arbitrator.[3] *Jackson* makes clear that where there has been delegation of gateway authority to the arbitrator, federal courts may not address a challenge to the validity of the arbitration agreement unless the challenge is specific to the delegation provision itself. 130 S.Ct. at 2779.

The two additional post-*Jackson* cases cited by Plaintiff expressly acknowledge *Jackson*'s limitation on judicial review of arbitration agreements that include provisions delegating gateway authority to the arbitrator. In *Allen v. Regions Bank*, 2010 U.S. App. LEXIS 16803 *6 (5th Cir. 2010), the Fifth Circuit Court of Appeals noted that "the issue of arbitrability is for an arbitrator

---

[3] The arbitration agreement at issue in *Bridge Fund* provided that "any and all disputes between [the parties] and any claim by either party that cannot be amicably settled shall be determined solely and exclusively by arbitration under the rules of the American Arbitration Association." *Id*. at *2. The *Bridge Fund* Court was silent as to whether this provision was sufficient to effect delegation of gateway authority to the arbitrator, perhaps because neither the district court nor the parties discussed the issue. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.,* 2008 U.S. Dist. LEXIS 83724 (E.D. Cal. 2008).

when the evidence clearly demonstrates that was the parties' agreement." Similarly, in *McKinley v. Bonilla*, 2010 U.S. Dist. LEXIS 71730 * 13 (S.D. Cal. 2010) the district court cited *Jackson* for the proposition that "*in the absence of a provision in the arbitration agreement stating otherwise*, the question of whether a particular dispute is arbitrable is to be decided by the courts, not the arbitrator." (emphasis added).

**B. Plaintiff's Supplemental Brief**

During the November 8, 2010 hearing on Plaintiff's motion for reconsideration, counsel argued that the "fee-splitting" provision contained within the parties' arbitration agreement renders the delegation provision unconscionable, and the court invited briefing on the subject. The fee-splitting provision contained in the parties' arbitration agreement provides:

> If an arbitration or court action is commenced by either party, the substantially prevailing party in that action is entitled to recover its out-of-pocket and court costs and reasonable attorneys' fee [sic] incurred therein.

(Doc. 18, Ex. B at 12).

Plaintiff's supplemental brief advances the same argument Plaintiff advanced in her opposition to the motion to compel arbitration and in her motion for reconsideration: that the fee-splitting provision renders the *entire arbitration agreement* unconscionable due to the high cost of AAA arbitrations. Plaintiff's supplemental brief does not address the issue Plaintiff was directed to brief: whether the fee-splitting provision renders

the *delegation provision* unconscionable.[4]   (*See* Plaintiff's Sup. Brief at 1-4).

Whether the fee-splitting provision renders the entire arbitration agreement unconscionable is for the arbitrator to decide. Plaintiff's contention that the fee-splitting provision renders the entire arbitration agreement unconscionable is precisely the type of general challenge that *Jackson* precludes where an agreement contains a delegation provision.  As the High Court explained:

> [Jackson] contended that the Agreement was both procedurally and substantively unconscionable. It was procedurally unconscionable, he argued, because it "was imposed as a condition of employment and was non-negotiable." *But we need not consider that claim because none of Jackson's substantive unconscionability challenges was specific to the delegation provision.* First, he argued that the Agreement's coverage was one sided in that it required arbitration of  claims an employee was likely to bring...but did not require arbitration of claims Rent-A-Center  was likely to bring ...This one-sided-coverage argument clearly did not go to the validity of the delegation provision.
>
> Jackson's other two substantive unconscionability arguments assailed arbitration procedures called for by the contract -- the fee-splitting arrangement and the limitations on discovery -- procedures that were to be used during arbitration under both the agreement to arbitrate employment-related disputes and the delegation provision. *It may be that had Jackson challenged the delegation provision by arguing that these common procedures as applied to the delegation provision rendered that provision unconscionable, the challenge should have been considered by the court*. To make such a claim based on the discovery procedures, Jackson would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable... Likewise, the unfairness of the fee-splitting arrangement may be more difficult to establish for the arbitration of enforceability than for arbitration of more complex and

---

[4] The supplemental brief was the second opportunity Plaintiff had to refine her attack on the arbitration agreement based on the Supreme Court's holding in *Jackson*.  (See Doc. 54).

**10**

>fact-related aspects of the alleged employment discrimination. Jackson, however, did not make any arguments specific to the delegation provision; he argued that the fee-sharing and discovery procedures rendered the entire Agreement invalid.

*Jackson*, 130 S.Ct. at 2780 (emphasis added, citations omitted).

Plaintiff's supplemental brief offers two cases in support of her contention that the fee-splitting provision contained in the parties' arbitration agreement renders the entire arbitration agreement unconscionable: (1) *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006), and (2) *AT&T Mobility II, LLC v. Pestano,* 2008 U.S. Dist. LEXIS 23135 (N.D. Cal. 2008). Neither case is relevant to the issue the court permitted supplemental briefing on.

*Nagrampa* was decided before the Supreme Court's decision in *Rent-A-Center* and did not concern a challenge to a provision delegating gateway authority to the arbitrator. Rather, *Nagrampa* concerned a party's challenge to the entire arbitration agreement. As there was no finding by the district court in *Nagrampa* that the parties' arbitration agreement delegated authority to determine threshold questions of arbitrability to the arbitrator, *Nagrampa* is inapposite. Further, *Nagrampa* in no way supports the proposition that a fee-splitting provision renders a delegation provision unconscionable as a matter of law:

>We reject Nagrampa's contentions that the fee-splitting provision and the "repeat player effect" render the *arbitration provision* substantively unconscionable. First, the fee-splitting provision is not per se substantively unconscionable under California law. See Cal.Civ. Proc. Code § 1284.2 (mandating default rule of arbitration that administrative costs be split equally and legal costs be borne individually). However, as discussed infra, *to the extent the fee-splitting provision may impede Nagrampa from vindicating statutory rights*, it would be unenforceable and illegal under California law as contrary to public policy.

**11**

469 F.3d at 1284-85 (emphasis added).

Like *Negrampa*, *Pestano* concerned a challenge to an entire arbitration agreement, not a delegation provision. There was no finding by the district court in *Pestano* that the parties' arbitration agreement delegated authority to determine threshold questions of arbitrability to the arbitrator. *Pestano* recognized that a "fee-splitting provision is 'not per se substantively unconscionable,'" but found that the fee-splitting provision at issue was unconscionable in and of itself:

> [T]he fee-splitting provision appears to create a backdoor and one-sided way around the arbitration agreement. This is troubling. Under the provision, if one party fails to pay its share of the fees, the other party can bring its claims in court. The provision seems designed to benefit AT&T -- chances are far greater that a small dealer will find itself unable to pay fees than a company like AT&T. Although facially neutral, the provision will likely lead to one-sided results, with the dealer more frequently being relegated to an inferior forum. In light of these factors, this order finds the fee-splitting provision to be unconscionable.

*Pestano*, 2008 U.S. Dist. LEXIS 23135 *16-17.

Plaintiff's supplemental brief does not establish that, in light of the fee-splitting provision, enforcement of the delegation provision results in any inequity, or that application of the fee-splitting provision to the delegation provision prevents Plaintiff from challenging the validity of the arbitration agreement. Plaintiff provides no evidence that the cost of submitting threshold questions of arbitrability to the arbitrator is so high as to impeded Plaintiff's ability to challenge the arbitration agreement. Plaintiff merely contends that the total cost of conducting the *entire arbitration,* including resolution of the substantive merits of the parties' disputes, could exceed $60,000.00. (Plaintiff's

Sup. Brief at 4). Nothing in the record reveals the cost of arbitrating Plaintiff's claim of unconscionability.[5]

Plaintiff's supplemental brief provides no evidence or legal authority to support the proposition that the fee-splitting provision renders the delegation provision unconscionable. Plaintiff's motion for reconsideration is DENIED.

**ORDER**

For the reasons stated, Plaintiff's motion for reconsideration is DENIED.

IT IS SO ORDERED.

**Dated:   December 20, 2010**          /s/ Oliver W. Wanger
                                        UNITED STATES DISTRICT JUDGE

---

[5] Pursuant to AAA Rule 7, an arbitration clause is treated as "an agreement independent of the other terms of the contract." There is no apparent reason why Plaintiff cannot initiate an arbitration solely for the purpose of challenging the validity of the arbitration agreement.

13